UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN E. BARNHOUSE,

    Plaintiff,

v.

PAT GLEBE, et al.,

    Defendants.

Case No. 07-1991-MJP-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff John E. Barnhouse, a state inmate at the Stafford Creek Correctional Complex, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights suit against several employees of the Washington State Department of Corrections. Dkt. No. 5. Plaintiff's complaint alleges defendants used excessive force against him, failed to provide him adequate medical treatment thereafter, and then filed a false infraction report against him. Dkt. No. 5 at 4-6. The present matter comes before the Court on defendants' motion to dismiss. Dkt. No. 15. After careful consideration of the motion, plaintiff's response, the governing law, and the balance of the record, the Court recommends that defendants' motion to dismiss be GRANTED, and plaintiff's case be DISMISSED with prejudice.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff's complaint centers on an Eighth Amendment deliberate indifference claim and a Fourteenth Amendment procedural due process claim.[1] With regard to plaintiff's Eighth Amendment claim, he alleges that on December 2, 2004, while he was incarcerated at the Monroe Correctional Complex ("MCC"), defendants Williams and Packer placed plaintiff in handcuffs and removed him to a "No-Contact Visiting Room Cell." Dkt. No. 5 at 6. There, while defendant Davis was removing plaintiff's handcuffs, plaintiff asserts that defendants Packer and Fuentes used excessive force, thereby breaking plaintiff's right hand. *Id.* Plaintiff alleges that defendants Cohn, Williams, and Davis all failed to intervene when defendants Packer and Fuentes used excessive force. Dkt. No. 5 at 7. Soon thereafter, plaintiff was seen by defendant Kalina, a registered nurse, who plaintiff contends looked at his right hand and told him that "there is nothing wrong." *Id.*

With respect to plaintiff's Fourteenth Amendment procedural due process claim, he alleges that defendant Packer filed a "Initial Serious Infraction Report" against plaintiff on December 2, 2004. Dkt. No. 5 at 4. Plaintiff alleges that he was falsely charged with violating W.A.C. §§ 137-25-030(508) ("Throwing objects, materials, substances, or spitting in the direction of another person(s)") and (717) ("Causing a threat of injury to another person by resisting orders, resisting assisted movement or physical efforts to restrain"), each of which are deemed Category B – Level 3 infractions.[2]

At a disciplinary hearing held on December 7, 2004, plaintiff alleges he was found guilty of the two infractions by defendant Kunkel. Dkt. No. 5 at 5. On January 3, 2005, plaintiff was notified that defendant Kunkel's decision was affirmed by defendant Glebe, Dkt.

---

[1] Plaintiff also brings his claims under the Washington State Constitution's Article I, § 14 (no cruel punishment), and Article I, § 3 (no deprivation of liberty or property without due process).

[2] Although Plaintiff cites W.A.C. § 137-28-260 in his complaint, the categories of serious infractions are listed at W.A.C. § 137-25-030.

REPORT AND RECOMMENDATION
PAGE - 2

No. 5 at 5, who is the Associate Superintendent at MCC, Dkt. No. 5 at 2. As a result, plaintiff alleges he was subjected to temporary disciplinary segregation, had his "Good-Time" credits revoked temporarily, and was transferred to another prison. Dkt. No. 5 at 9. Plaintiff also claims that he incurred an unspecified expense for the cost of transferring his personal property to the other prison. Dkt. No. 5 at 8.

At some undetermined time, plaintiff alleges that he filed a Personal Restraint Petition with the Washington State Court of Appeals based on the finding that he was guilty of the two infractions. According to plaintiff, the Washington State Court of Appeals "revers[ed] the Two Serious Infractions" in February 2007. Dkt. No. 5 at 5. Plaintiff asserts that he incurred unspecified debts to the Washington State Court of Appeals for having to litigate his Personal Restraint Petition. Dkt. No. 5 at 8.

Plaintiff filed his § 1983 complaint on December 12, 2007. Dkt. No. 1. By his suit, plaintiff is seeking $82,500 in compensatory and punitive damages, as well as his costs and attorneys' fees. Dkt. No. 5 at 12-14.

### III. DISCUSSION

#### A. The Fed. R. Civ. P. 12(b)(6) Standard

A federal district court may dismiss a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) only when it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003). In doing so, the district court must accept all factual allegations in the complaint as true and must liberally construe those allegations in a light most favorable to the non-moving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations will not be similarly treated, nor will arguments that extend far beyond the allegations contained in the complaint. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). The district court should not weigh the evidence, ponder factual nuances, or determine which party will ultimately prevail; rather, the issue is whether the facts

alleged in the plaintiff's well-pleaded complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

  B. <u>Plaintiff's Claims Against Defendants Packer, Williams, Davis, Fuentes, Kalina, And Cohn Are Untimely.</u>

A motion to dismiss pursuant to Rule 12(b)(6) on statute of limitations grounds involves an interplay of state and federal law. Because § 1983 contains no specific statute of limitations, this Court must borrow the forum state's statute of limitations for personal injury actions. *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001). State law also governs tolling of the statute of limitations to the extent that such rules are not inconsistent with federal law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1155 (9th Cir. 2000). However, federal courts apply Fed. R. Civ. P. 3 in order to determine when a § 1983 action is "commenced" for tolling purposes. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). Pursuant to Rule 3, an action is commenced when the complaint is filed with a district court. *Id.*

The U.S. Supreme Court has held that, in considering § 1983 claims, district courts should borrow the forum state's general or residual statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 250 (1989); *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124 n.5 (2005). "In Washington, that would be three years." *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) (citing R.C.W. § 4.16.080(2)). Accordingly, the applicable limitations period in this case expired three years from the date plaintiff's cause of action "accrued." R.C.W. § 4.16.080(2); *see also Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

Although state law determines the length of the limitations period, federal law determines when the claim accrues. *Western Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000). Under federal law, a cause of action accrues and the limitations period commences "when the plaintiff knows or has reason to know of the injury which is the basis of

the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In *Wallace v. Kato*, the Supreme Court restated this general rule by explaining that accrual occurs "when the plaintiff has 'a complete and present cause of action,'" that is, "when 'the plaintiff can file suit and obtain relief.'" *Wallace v. Kato*, 590 U.S. ___, 127 S. Ct. 1091, 1095 (2007).

Here, plaintiff's complaint alleges that the wrongful conduct that gave rise to his claims against defendants Packer, Williams, Davis, Fuentes, Kalina, and Cohn occurred on December 2, 2004. Dkt. No. 5 at 6-7. Therefore, plaintiff's claims against these individuals accrued on December 2, 2004, and expired three years later, on December 2, 2007. *See* R.C.W. § 4.16.080(2). Plaintiff filed his complaint on December 12, 2007. Dkt. No. 1. Accordingly, Plaintiff's claims against defendants Packer, Williams, Davis, Fuentes, Kalina, and Cohn appear to be time-barred.

With regard to defendant Kunkel, plaintiff's complaint alleges that the wrongful conduct that gave rise to his claim against Kunkel occurred on December 7, 2004. Dkt. No. 5 at 5. Therefore, plaintiff's claim against Kunkel accrued on December 7, 2004, and expired three years later, on December 7, 2007. *See* R.C.W. § 4.16.080(2). Because plaintiff did not file his complaint until December 12, 2007, his claim against defendant Kunkel also appears to be untimely.

In his opposition, plaintiff argues that, under *Houston v. Lack*, 487 U.S. 266 (1988), his § 1983 action against defendants Packer, Williams, Davis, Fuentes, Kalina, Cohn, and Kunkel is timely because it is deemed filed "the day it is delivered to prison officials." Dkt. No. 26 at 8. The U.S. Supreme Court in *Houston* held that a prisoner's notice of appeal in a habeas action was deemed filed when the prisoner delivered the notice to the prison authorities for forwarding to the district court. *See Houston*, 487 U.S. at 270.

The "mailbox rule" announced in *Houston* has been extended by the Ninth Circuit to other court documents in the prisoner context, *see, e.g., Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (applying "mailbox rule" to habeas petition), and this Court finds that the

REPORT AND RECOMMENDATION
PAGE - 5

weight of authority within the Ninth Circuit agrees that the "mailbox rule" should also be extended to the filing of a § 1983 civil rights complaint by a prisoner. *See, e.g., Bishop v. Schriro*, 2008 U.S. Dist. LEXIS 45718, at *4 n.1 (D. Ariz. June 9, 2008) (applying "mailbox rule" to inmate's § 1983 complaint); *Sierra v. Ramirez*, 2007 U.S. Dist. LEXIS 85824, at *4-*5 (D. Or. Nov. 19, 2007) (same); *Martin v. Am. Honda Motor Co.*, 2007 U.S. Dist. LEXIS 41457, at *6-*7 (S.D. Cal. June 7, 2007) (same). Accordingly, this Court will apply the "mailbox rule" in the instant case.

Plaintiff has failed to allege *when* he delivered his complaint to prison officials. However, it is apparent from his complaint that he signed it on December 7, 2007. Dkt. No. 5 at 15. Therefore, plaintiff could not have delivered his complaint to prison officials for mailing to the court prior to that date. *See Bishop*, 2008 U.S. Dist. LEXIS 45718, at *4 n.1 (finding plaintiff could not have handed his complaint to a prison official any earlier than the date he signed the complaint). Consequently, plaintiff's claims against defendants Packer, Williams, Davis, Fuentes, Kalina, and Cohn are still time-barred, since his claims against them expired on December 2, 2007. However, plaintiff's claim against defendant Kunkel could be timely because that claim expired on December 7, 2007—the same date plaintiff signed his complaint. Assuming plaintiff delivered his complaint to a prison official on the same date he signed it, his claim against defendant Kunkel would be timely. Nonetheless, as discussed in Section D. below, plaintiff's claim against defendant Kunkel will still be dismissed for failure to state a claim.

Plaintiff also contends that his claims are not time-barred because he did not know "the essential elements of the cause of action unt[i]l much later." Dkt. No. 26 at 3. However, a plaintiff need not know all the elements of a cause of action before the claim will begin to accrue; a cause of action accrues and the limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers*, 174 F.3d at 991. Plaintiff knew of the injury that is the basis of his § 1983 action on December 2,

2004, when he was allegedly subjected to excessive force and denied adequate medical care, Dkt. No. 5 at 6, and on December 7, 2004, when he claims he was found guilty of two infractions by defendant Kunkel without due process, Dkt. No. 5 at 5. Accordingly, plaintiff's claims accrued, and the three-year statute of limitations began to run, on those dates.

Additionally, plaintiff counters in a declaration submitted in response to defendants' reply brief that he did not know his hand was broken until December 12, 2004, when an x-ray was taken and reviewed by a doctor. Dkt. No. 32 at 2, 33 at 1. Even considering plaintiff's declaration, which contains factual allegations not included in his complaint, plaintiff's claims are still time-barred. He alleges in his complaint that on December 2, 2004, while defendants Packer and Fuentes used excessive force, plaintiff was in "extreme pain." Dkt. No. 5 at 6. Plaintiff further alleges that that same day, when he saw defendant Kalina, "I was in excruciating pain and complaining that my hand felt broken (extreme pain)," and that, despite this, defendant Kalina did nothing to evaluate if anything serious had happened to plaintiff's hand. Dkt. No. 5 at 11. Therefore, according to plaintiff's own allegations in his complaint, he was well aware of the injury that is the basis of his § 1983 action against defendants as of December 2, 2004. That an x-ray did not confirm until later plaintiff's belief that his hand was broken does not change this result—plaintiff had personal knowledge of all the facts necessary to establish his legal claim at that time.

C. Plaintiff's Eighth Amendment Claims Are Also Barred For Failure To Exhaust Administrative Remedies.

The Prison Litigation Reform Act ("PLRA") expressly provides that, "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Those remedies "need not meet federal standards, nor must they be plain, speedy, and effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotation omitted). Even when the prisoner seeks relief not

REPORT AND RECOMMENDATION
PAGE - 7

available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988)).

Here, even if plaintiff's Eighth Amendment claims against defendants Packer, Williams, Davis, Fuentes, Kalina, and Cohn were not time-barred, the claims must still be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing suit. Defendants have submitted a declaration from Devon Schrum, who is the Grievance Program Manager with the Washington State Department of Corrections. Dkt. No. 15-2 at 2. In his Declaration, Schrum describes the Department of Corrections' multi-step grievance procedure and states that excessive use of force and inadequate medical treatment are grievable issues under the Department of Corrections' grievance program.[3] Dkt. No. 15-2 at 2-3. Schrum states that he has reviewed plaintiff's 50 different grievances filed between December 1, 2004 and December 31, 2007, and, of those 50 grievances, plaintiff has only exhausted one grievance, which concerned a lost pair of tennis shoes.[4] Dkt. No. 15-2 at 4.

---

[3] Disciplinary actions are not grievable, *see* Dkt. No. 15-2 at 3, and therefore plaintiff's Fourteenth Amendment claims against defendants Packer, Kunkel, and Glebe are not discussed in this section.

[4] Moreover, of the eight grievances filed by plaintiff in December 2004, none allege an excessive use of force or denial of adequate medical care. Dkt. No. 15-2 at 4-29. While plaintiff submitted a grievance on or about December 28, 2004 for "not providing vid[e]o of staff misconduct on 12.2.[0]4," plaintiff states in the grievance only that he needs the video for his defense against an infraction and for a "1983 law suite [sic]." Dkt. No. 15-2 at 26. In the grievance, plaintiff makes no mention of excessive use of force or denial of adequate medical care. *Id.*

REPORT AND RECOMMENDATION
PAGE - 8

In his opposition, plaintiff does not challenge defendants' evidence that he did not file a single grievance alleging excessive use of force or denial of adequate medical care on December 2, 2004, nor does he offer any contradictory evidence. Instead, relying upon *Kennedy v. Tallio*, 20 Fed. Appx. 469 (6th Cir. 2001), an unpublished decision, plaintiff argues that an inmate who is prevented from utilizing the prison's grievance procedure is "said to have exhausted." Dkt. No. 26 at 5. *Kennedy* held that if an inmate has been placed on "modified access" to the prison's grievance procedure (that is, he must first obtain permission from the grievance coordinator to file a grievance), and he is not allowed to file a grievance because it is deemed to be, for example, frivolous or non-meritorious, the inmate has exhausted his available administrative remedies as required by § 1997e(a). *See Kennedy*, 20 Fed. Appx. at 470. Here, there is no allegation that plaintiff was ever required to submit his grievances for screening prior to filing, or that he was ever not allowed to file a grievance. To the contrary, the uncontroverted evidence indicates that plaintiff filed 50 grievances over the course of three years, including filing one grievance for someone placing a piece of French bread in his chocolate pudding. Dkt. No. 15-2 at 22. This evidence belies any suggestion by plaintiff that there were any obstacles to him filing grievances.

Relying upon *Bishop v. Lewis*, 155 F.3d 1094 (9th Cir. 1998), plaintiff also states that "allegations of prison officials frustrating the grievance process are sufficient to defeat a motion to dismiss on exhaustion grounds." Dkt. No. 26 at 5. *Bishop* concerned an inmate whose suit was dismissed by the district court because he failed to file a "Notice of Exhaustion of Administrative Remedies" form—which affirmed that he had exhausted all available remedies—with his mandamus petition. The inmate did, however, file with the district court a copy of the grievance he submitted to the prison, as well as a copy of the appeal he filed after the prison apparently failed to respond to the grievance. The *Bishop* court reversed the district court's dismissal, holding that the inmate did not need to file the "Notice of Exhaustion" form with the district court in view of the fact that he filed a copy of his grievance and his appeal,

REPORT AND RECOMMENDATION
PAGE - 9

and included allegations in his mandamus petition that the prison had failed to respond to his efforts to exhaust his internal remedies, had a practice of delaying meritorious grievances, and failed to meet the standards for grievance procedures. *Bishop*, 155 F.3d at 1096. Given these circumstances, the *Bishop* court found that the inmate's failure to file the form certifying that he had exhausted all available remedies was understandable. *Id.* Here, unlike in *Bishop*, plaintiff has not submitted to the Court a copy of *any* grievance, much less a grievance concerning the conduct that is the subject of this suit, nor has he made any allegations about the futility of his prison's grievance system similar to the allegations made by the plaintiff in *Bishop*. Accordingly, *Bishop* is unavailing to plaintiff.

>   D. <u>Plaintiff's Allegations Against Defendants Packer, Kunkel, And Glebe Fail To State A Claim.</u>

To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must demonstrate that the state has deprived him or her of a protected liberty or property interest, and that the procedures attendant upon that deprivation were not constitutionally sufficient. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). A court encountering a procedural due process claim must first determine whether the plaintiff has been deprived of a liberty or property interest that is constitutionally protected as a matter of substantive law. *See Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541 (1985). In the prisoner context, the U.S. Supreme Court has held that state law creates a liberty interest deserving protection under the Fourteenth Amendment's Due Process Clause only when the deprivation in question (1) restrains the inmate's freedom in a manner not expected from their sentence and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995).

Here, plaintiff alleges that as a result of his guilty finding at the December 7, 2004 hearing and defendant Glebe's subsequent decision to affirm the finding of guilt, he was subjected to temporary disciplinary segregation, had his good time credits revoked temporarily,

and was transferred to another prison. Dkt. No. 5 at 9. However, plaintiff has made no showing in his complaint how being placed in disciplinary segregation *temporarily* and having his good time credits revoked *temporarily* "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486 (holding that inmate's disciplinary segregation did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest). In addition, plaintiff's transfer to another prison within the State of Washington's prison system does not implicate due process. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *see also Vandergriff v. DeLano*, 2007 U.S. Dist. LEXIS 50236 at *31 (W.D. Wash. May 24, 2007). "An inmate's liberty interests are sufficiently extinguished by his conviction so that the state may change his place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another." *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985).

Plaintiff also claims that at some undetermined time he incurred an unspecified expense related to the transfer of his personal property to the other prison. Dkt. No. 5 at 8. However, this Court is not aware of any authority holding that the cost incurred by an inmate to transfer personal property to another prison is a protectable property interest that implicates constitutional due process concerns.[5] In any case, even if the expense incurred by plaintiff implicated a protectable property interest, deprivation of property does not constitute a due

---

[5] While Washington State Department of Corrections Policy Directive 440.020 states that the Department of Corrections will transport a "limited amount of offender personal property" between prisons, the amount of personal property that the Department of Corrections will transfer is within the discretion of the superintendant of the prison. *See* R.C.W. § 72.02.045. Even assuming, *arguendo*, that the Policy Directive created a protectable property interest, plaintiff has made no showing how it was violated. In addition, *Burton v. Lehman*, 153 Wn.2d 416, cited by plaintiff in his complaint, based its holding on an old version of R.C.W. § 72.02.045. The statute has since been amended to clarify that the amount of personal property that the Department of Corrections will transfer is within the discretion of the prison's superintendant. *See* 2005 Wa. Ch. 382.

REPORT AND RECOMMENDATION
PAGE - 11

process violation where, as here, a post-deprivation state remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under Washington state law, plaintiff could have filed a personal property claim for his monetary loss under R.C.W. § 72.02.045 (the state, state officials, and employees are liable for loss of inmate property due to intentional act or negligence) or R.C.W. 4.92.090 (state shall be liable for damages arising out of tortious conduct). Accordingly, adequate post-deprivation remedies under state law were available to plaintiff, and he cannot claim a constitutional due process violation.

In addition, plaintiff alleges that he filed a Personal Restraint Petition based on the December 2, 2004 Infraction Report and subsequent guilty finding with the Washington State Court of Appeals, Division II, which, according to plaintiff, "revers[ed] the Two Serious Infractions" in February 2007. Dkt. No. 5 at 5. Plaintiff asserts that he incurred unspecified debts to the Washington State Court of Appeals in litigating his Personal Restraint Petition. Dkt. No. 5 at 8. However, plaintiff cannot claim costs for personal restraint or habeas petitions in state court as damages in a separate federal § 1983 action because plaintiffs are generally not entitled to costs or expenses for successful habeas petitions and, in any event, any claim for those costs should be made with the state court at the conclusion of the habeas action. *See Madrigal v. Ryder*, 2007 U.S. Dist. LEXIS 41102, at *9-*10 (W.D. Wash. June 5, 2007).

Even assuming, *arguendo*, that plaintiff was deprived of a protected liberty or property interest as a result of his guilty finding at the December 7, 2004 hearing, there is no showing by plaintiff at all that he was not accorded sufficient due process. A procedural due process claim arising from the filing of a false disciplinary report against an inmate is cognizable only if the protections outlined by the U.S. Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974) were not afforded to the inmate at a disciplinary hearing.[6] *See Freeman v. Rideout*, 808

---

[6] In addition, defendant Packer's alleged act of filing false charges against plaintiff does not give rise to a per se constitutional violation actionable under § 1983. Plaintiff would only suffer a deprivation as a result of the finding of guilt by the disciplinary hearing, not

REPORT AND RECOMMENDATION
PAGE - 12

F.2d 949, 952-53 (2nd Cir. 1986). The *Wolff* protections include (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial hearing body; (3) the right to call witnesses and to present documentary evidence; and (4) a written statement of reasons for the disciplinary action taken. *See Wolff*, 418 U.S. at 563-70; *see also Black v. Lane*, 22 F.3d 1395, 1402 n.9 (7th Cir. 1994). Here, there has been no showing by plaintiff that he was not provided the due process protections set forth in *Wolff*. Moreover, with respect to defendant Glebe, who allegedly later upheld defendant Kunkel's guilty finding, there has been no allegation by plaintiff demonstrating how Glebe's affirmance somehow violated plaintiff's due process rights. Therefore, plaintiff has failed to state a cognizable procedural due process claim.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motion to dismiss (Dkt. No. 15) be GRANTED and plaintiff's § 1983 complaint (Dkt. No. 5) be DISMISSED with prejudice. As a result, plaintiff's three motions for default judgment, motion for temporary restraining order, motion for extension of time, motion to compel discovery, and motion for appointment of counsel may be DENIED as MOOT. A proposed order accompanies this Report and Recommendation.

DATED this 3rd day of September, 2008.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

---

merely because of the alleged filing of false charges by Packer. *See Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986).

REPORT AND RECOMMENDATION
PAGE - 13